## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ANDRE THURMON, | : | |
| | : | |
|      Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:11-CV-1412-RWS |
| CLAYTON COUNTY; DEPUTY | : | |
| PATRICK FLUELLEN, in his | : | |
| official and individual capacity; | : | |
| LIEUTENANT SAMUEL SMITH, | : | |
| in his official and individual | : | |
| capacity; DEPUTY DERONALD | : | |
| DAVIS, in his individual and | : | |
| official capacity; JOHN DOES 1-5, | : | |
| in their individual and official | : | |
| capacity; and JANE DOES 1-5, in | : | |
| their individual and official | : | |
| capacity, | : | |
| | : | |
|      Defendants. | : | |

### ORDER

This case comes before the Court on Defendants' Motion for Summary

Judgment [36].  After reviewing the record, the Court enters the following

Order.

**Background**

On July 18, 2008, at approximately 2:00 a.m., Defendant Fluellen, a Deputy with the Clayton County Sheriff's Office, was directing traffic near a construction area where a portion of road was being re-paved. (Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment ("Def.s' Statem. Mat. Facts"), Dkt. [36-2] ¶ 1.) Defendant Fluellen approached Plaintiff's vehicle. He alleges that Plaintiff appeared to be under the influence of alcohol or drugs. (Def.s' Statem. Mat. Facts, Dkt. [36-2] ¶¶ 3-4.) Defendant Fluellen learned from Clayton County Dispatch that Plaintiff had a suspended license. (Id.) At that time, Defendant Fluellen instructed Plaintiff to exit the vehicle. (Id. ¶ 4.)

According to Defendant Fluellen, Plaintiff became belligerent and uncooperative, and Defendant Fluellen decided Plaintiff should be taken into custody for suspicion of driving under the influence, driving on a suspended license, and other charges. (Id. ¶ 5.) Plaintiff disputes that he was belligerent, and alleges that Defendant Fluellen handcuffed him and had a weapon trained on him immediately after he exited the car. (Pl.'s Resp. To Def.s' Statem. Mat. Facts, Dkt. [37] ¶ 5.) Defendant Fluellen says an altercation developed when he attempted to handcuff Plaintiff and several officers arrived to assist him with

2

the arrest.  (Def.s' Statem. Mat. Facts, Dkt. [36-2] ¶¶ 5-6.)  Defendant Fluellen

alleges that officers used necessary force to subdue Plaintiff, including the use

of OC spray by Defendant Fluellen, the use of a taser device two times by an

Officer Deese with the Clayton County Police Department, and various blows

to Plaintiff's body, head, legs and shoulders.  (Id. ¶ 7.)

 Plaintiff was examined by fire and rescue personnel at the scene of the

arrest before being transported to the Clayton County Jail.  (Id. ¶ 8.)  When he

arrived at the jail, Plaintiff was examined by Nurse Riley, an employee of

Correct Health, LLC; she completed an intake form noting that Plaintiff had

consumed enough beer to "blackout" and the only medical issues noted were

scratches.  (Def.s' Statem. Mat. Facts, Dkt. [36-2] ¶ 9.)  Plaintiff disputes the

nurse's medical findings.  (Pl.'s Resp. to Def.s' Statem. Mat. Facts, Dkt. [37] ¶

9.)

 Because of his altercation with officers at the scene, and threats made by

Plaintiff toward officers while being booked, Plaintiff was placed on Security

Segregation in a special housing unit.  (Def.s' Statem. Mat. Facts, Dkt. [36-2] ¶

10.)  While Plaintiff was in Security Segregation, Deputy Fluellen, along with

three other officers, went to Plaintiff's cell to serve him with a Notice of

Personal Service indicating that Plaintiff's driver's license had been suspended.

AO 72A
(Rev.8/82)

(Id. ¶ 11.)  According to Defendant Fluellen, the other officers were Officer

Gomez, Officer Bell, and Officer Montford (none of whom are named

Defendants in this action). (Id. ¶ 12; see also Deposition of Deputy Patrick D.

Fluellen, Dkt. [36-3] 22:11-12.)  In his deposition, Plaintiff identified the other

officers as Officer Gomez, Officer Smith, and Defendant DeRonald Davis.[1]  (Id.

¶ 12; see also Deposition of Andre Thurmon, Dkt. [36-4] 39:11-40:11.)

Plaintiff stated that the Officer Smith who came to his cell was not Defendant

Samuel Smith.[2]

        According to Plaintiff, he was awoken by the officers; two guarded the

door to his cell (Officers Davis and Gomez), while another slammed him

against the wall, punched him in the chest, shook him back down on the bed,

and then stood him up again and instructed him to pay attention to Defendant

Fluellen and sign a piece of paper.  (Id. ¶ 14.)  Plaintiff identified Officer Smith

---

[1] Defendant Davis says he was not employed by the Sheriff's Office until May
2009, almost a year after the events in question, and he is unfamiliar with Plaintiff and
the allegations contained in this suit.  (Id. ¶ 28.)  Plaintiff disputes Defendant Davis's
claim, however, because Plaintiff identified Defendant Davis as a participant in the
events of July 21, 2008.  (Pl.'s Resp. to Def.s' Mat. Facts., Dkt. [37] ¶ 28.)

[2] Plaintiff was shown a picture of Defendant Samuel Smith during his
deposition.  Plaintiff stated repeatedly that the officer in the photograph was not the
Officer Smith who came to his cell with Defendant Fluellen.  (Def.s' Statem. Mat.
Facts, Dkt. [36-2] ¶ 13; see also Deposition of Andre Thurmon, Dkt. [36-4], 39:11-
24.)

4

as the individual who used force against him.  (Id.)  Plaintiff does not claim that Defendant Fluellen or Defendant Davis used force against him, and he states that Defendant Smith was not in the cell when the incident occurred.  (Id. ¶ 16.)

After Defendants Fluellen and Davis and Officers Smith and Gomez left Plaintiff's cell, Plaintiff spoke with Officers Munson and Moss about the alleged incident.  Those officers contacted Defendant Smith to come to Plaintiff's housing area to discuss Plaintiff's concerns. (Id. ¶ 18.)  Defendant Smith gave Plaintiff a statement form, which Plaintiff completed and returned to the officers.  (Id. ¶ 19.)  Plaintiff was then transported to the jail infirmary for evaluation by medical staff.  He was seen by Nurse Sheila and Dr. Smith.  (Id. ¶ 20.)  Plaintiff was x-rayed and then returned to his cell.  (Id. ¶ 21.)  The next day, Plaintiff's x-rays were read by Dr. Merrill Berman, who concluded that Plaintiff had a partially collapsed lung.  (Id. ¶ 22-23.)  Plaintiff was transported to Southern Regional Hospital two days later for surgery to repair his lung.  (Id. ¶ 24.)

Defendants allege that it is the policy of the County Sheriff to provide adequate medical care to inmates, and to that end, Correct Health, LLC is under

contract to provide care to inmates at the Clayton County Jail.[3]  (Id. ¶ 25.)  The

Sheriff has established written policies and procedures regarding the provision

of medical care to inmates, and all employees are educated and trained to

adhere to those policies.  (Id. ¶ 26.)  When an inmate needs medical treatment

outside of the jail infirmary, that decision is made by the medical staff of

Correct Health, LLC, not by the Sheriff's Office.  (Id. ¶ 27.)

## Discussion

### I.      Motion for Summary Judgment - Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  "The moving

party bears 'the initial responsibility of informing the . . . court of the basis for

its motion, and identifying those portions of the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any,

---

[3] Plaintiff maintains that the contract to provide medical care was between Clayton County and Georgia CorrectHealth, LLC, but CorrectHealth, LLC provided the actual care.  (Pl.'s Resp. to Def.s' Statem. Mat. Facts, Dkt. [37] ¶ 25.)  The Court notes that the contract, which is attached to Plaintiff's Response to Defendants' Motion for Summary Judgment, appears to be between Clayton County and Georgia Correctional Health, LLC. [37-3].

6

which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

7

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.  Defendants' Motion for Summary Judgment

### A.    Georgia Renewal Statute

The Georgia Renewal Statute, O.C.G.A. § 9-2-61,[4] ("renewal statute") permits re-filing of certain actions outside of the statute of limitations.  The parties do not dispute that Plaintiff's re-filed action (the action before the Court now) is allowed under the renewal statute.[5]  (Defendants' Brief in Support of Motion for Summary Judgment ("Def.s' MSJ Br."), Dkt. [36-1], at 9.)

---

[4] "When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later . . . ."  Dismissal for want of prosecution – the case here – is deemed a voluntary dismissal for purposes of O.C.G.A. § 9-2-61(a).  White v. KFC Nat'l Mgmt. Co., 493 S.E.2d 244, 246 (Ga. Ct. App. 1997).

[5] The parties also do not dispute that this action was filed outside of the statute of limitations.

However, Defendants maintain that Plaintiff has impermissibly added claims, and added and changed Defendants in his renewal action.  Specifically, they argue: (1) the renewal statute is not available to add new parties or new claims; (2) a renewal action is limited to the capacity in which a party was originally named; and (3) the renewal statute applies only where the original action was properly served on the Defendants before it was dismissed.  (Id. at 9-10.) Therefore, (1) because Plaintiff only served Defendants Clayton County and Fluellen with the original suit, Defendants Smith and Davis must be dismissed from the renewal action, (2) because Defendant Fluellen was sued only in his individual capacity in the original suit, he cannot now be sued in his official capacity; and (3) Plaintiff's claim for intentional infliction of emotional distress, which was not included in the original action, must be dismissed as to all Defendants in the renewal action.  The Court agrees with Defendants.

First, "[t]he renewal statute applies only to actions that are valid prior to dismissal.  To constitute a valid action, the complaint must be served personally on the defendant."  Stephens v. Shields, 608 S.E.2d 736, 738 (Ga. Ct. App. 2004) (quoting Hudson v. Mehaffey, 444 S.E.2d 322, (Ga. Ct. App. 1999)) (internal quotations and citations omitted); see also Scott v. Muscogee Cnty., 949 F.2d 1122, 1123 (11th Cir. 1992) ("[T]he renewal statute is

9

inapplicable if the original complaint did not constitute a 'valid action' before

dismissal.  'The mere filing of appellant's complaint ... without service on

[defendant, does] not ... constitute a 'valid' action ....") (quoting <u>Acree v. Knab</u>,

348 S.E.2d 716, 717 (1986)) (internal citations omitted).  Here, Defendants

assert that neither Defendant Smith nor Defendant Davis was served with the

original suit.  Plaintiff does not dispute that fact or offer evidence to the

contrary.  Therefore, the renewal action must be **DISMISSED** against those

two Defendants.

Second, the renewal statute does not allow addition of new Defendants

who were not sued in the original action.  See <u>Wagner v. Casey</u>, 313 S.E.2d

756, 758 (Ga. Ct. App. 1984) ("[T]he renewal statute 'may not be used to

suspend the running of the statute of limitation as to defendants different from

those originally sued.'") (quoting <u>Cornwell v. Williams Bros. Lumber Co.</u>, 229

S.E.2d 551, 552 (Ga. Ct. App. 1976)).  Under Georgia law, to suspend the

running of the statute of limitations in a renewal action, the parties sued in the

original and re-filed actions must be "substantially identical."  <u>Soley v. Dodson</u>,

569 S.E.2d 870, 872-3 (Ga. Ct. App. 2002).  "Suits against public employees in

their official capacities are in reality suits against the state and, therefore,

involve sovereign immunity. It follows that [a defendant] in his individual

capacity is not substantially identical to [the defendant] in his [official capacity]." Id. at 873 (citing Colvin v. McDougall, 62 F.3d 1316, 1318 (11th Cir. 1995)).  Georgia courts have stressed that "the difference between an official capacity suit and an individual capacity suit is a big difference." Colvin, 62 F.3d at 1318.

Here, in his original action, Plaintiff sued Deputy Fluellen, Deputy Smith, and Deputy Davis "as Individuals" and "in their individual capacities." (Original Complaint, Dkt. [37-1] at 1.)  Plaintiff cannot now sue Defendant Fluellen (the only remaining individual Defendant) in his official capacity. Therefore, the claims against Defendant Fluellen in his official capacity must be **DISMISSED**.[6]

Third, Plaintiff is not permitted to add new claims in his renewal action. See Alfred v. Right Stuff Food Stores, Inc., 525 S.E.2d 717, 719 (Ga. Ct. App. 1999) (adding claim of nuisance to re-filed complaint found impermissible). "To avoid the bar of the statute of limitation, a cause of action renewed under O.C.G.A. § 9-2-61(a) must state substantially the same cause of action as the one it succeeded." Travis Pruitt & Assoc.s v. Hooper, 625 S.E.2d 445, 451 n. 2

---

[6] Although Plaintiff does not address the issue in his response brief, the Court notes that Plaintiff is also barred from adding "John Does 1-5" and "Jane Does 1-5" who appear in the style of the renewal case but were not parties to the original suit.

(Ga. Ct. App. 2005). The "concept of notice pleading is also applicable in determining whether the issues in an original complaint are substantially identical to those in a renewal action." Soley, 569 S.E.2d at 873. In other words, the Court must determine "whether on its four corners the complaint places the defendant on notice of the claim against him." Id.

Plaintiff's original complaint contained the following enumerated counts: (1) a 42 U.S.C. § 1983 claim against all individual Defendants based on deliberate indifference to Plaintiff's serious medical needs; (2) assault and battery against all individual Defendants; (3) excessive force (Defendants are not specified, but Defendant Fluellen is the only individual mentioned under the count); and (4) a 42 U.S.C. § 1983 claim against Clayton County based on "deliberate indifference to the constitutional rights of persons in Clayton County, Georgia." (See generally Original Complaint, Dkt. [37-1].) The complaint in the renewal action contains the following enumerated counts: (1) a 42 U.S.C. § 1983 claim against all Defendants for violation of the due process clause of the fourteenth amendment (based on excessive use of force); (2) a 42 U.S.C. § 1983 claim against Clayton County based on "*Monell* Liability;" (3) assault and battery against the individual Defendants; (4) intentional infliction of emotional distress against all Defendants; (5) punitive damages against all

12

Defendants; (6) damages against all Defendants; and (7) attorney's fees under 42 U.S.C. § 1988 against all Defendants.[7]   (See generally Complaint for Damages, Dkt. [1].)

Defendants argue that Plaintiff is seeking to add new claims under his renewal action; specifically, a claim for intentional infliction of emotional distress.  (Def.s' MSJ Br., Dkt. [36-1] at 11.)  Plaintiff counters that he has simply "re-casted" the claims in his original complaint, and the only difference is that the renewal complaint contains more detail regarding his claims. (Plaintiff's Response Brief in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Resp. Br."), Dkt. [37] at 3-4.)  The Court agrees with Defendants.

Plaintiff points to Defendant Fluellen's answer in the original action as evidence that Defendants were on notice regarding all of Plaintiff's claims.  (Id. at 4.)  Specifically, Plaintiff asserts that *all* Defendants were on notice regarding *all* of the claims now in the renewal action because Defendant Fluellen denied a discrete set of Plaintiff's allegations in his original answer.  (Id.; see Answer and Defenses of Defendant Deputy Fluellen, Dkt. [37-2] ¶¶ 26-29 (denying

---

[7] Although not labeled as enumerated counts, similar claims for damages were included in Plaintiff's original complaint.  (Original Complaint, Dkt. [37-1] at 8-9.)

allegations contained in four paragraphs of Plaintiff's original complaint regarding Plaintiff suffering damages as a result of a battery and the events that occurred during the traffic stop and Plaintiff's arrest).)  None of the allegations or denials highlighted by Plaintiff address intentional infliction of emotional distress.

Additionally, Plaintiff argues that Defendants were on notice regarding the intentional infliction of emotional distress claim because "[f]or intentional infliction of emotional distress the Plaintiff must show that the defendant's conduct was outrageous or egregious[, and in] the original complaint, Plaintiff complained that the defendant's [*sic*] conduct in arresting him and when they visited him in the jail was outrageous and egregious."  (Id. at 4.)  Further, Plaintiff's original request for damages covered damages "based on [defendants'] conduct that caused [Plaintiff] loss of enjoyment of life and emotional distress."  (Id.)  The Court finds Plaintiff's reasoning and evidence unpersuasive.  Piecing together words and phrases from throughout the original complaint that hint at an intentional infliction of emotional distress claim is insufficient.

Plaintiff has failed to show that Defendants were on notice under the original complaint of an intentional infliction of emotional distress claim

14

against them.  Therefore, that claim may not be added to the renewal action and it is **DISMISSED** as to all Defendants.

Based on the foregoing, the remaining claims and Defendants in the renewal action are as follows: (1) a 42 U.S.C. § 1983 claim against Defendant Clayton County; (2) a 42 U.S.C. § 1983 claim against Defendant Fluellen in his individual capacity based on deliberate indifference to Plaintiff's serious medical needs; (3) an excessive force claim against Defendant Fluellen in his individual capacity; and (4) an assault and battery claim against Defendant Fluellen in his individual capacity.  The Court addresses the remaining claims below.

B.    Clayton County - 42 U.S.C. § 1983

Plaintiff argues that Clayton County is liable for violations of 42 U.S.C. § 1983 under Monell v. Dep't of Soc. Serv.s of the City of NY, 436 U.S. 658 (1978).  "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436 U.S. at 690.  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality

cannot be held liable under § 1983 on a *respondeat superior* theory." Id. at 691. Plaintiff must demonstrate that Clayton County, "through its *deliberate* conduct, . . . was the 'moving force' behind the injury alleged." Bd. of the Cnty. Comm'rs of Bryan Cnty., Ok. v. Brown, 520 U.S. 397, 404 (1997). In other words, Plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id.

In his renewal complaint, Plaintiff alleges that Clayton County, "doing business as the Clayton County Sheriff's Office created a policy, custom, or practice in [*sic*] which allowed and authorized [the individual Defendants] to commit assault and battery on the Plaintiff." (Complaint for Damages, Dkt. [1] ¶ 81.) Plaintiff also alleges that the County, doing business as the Sheriff's Office, created a policy or custom that allowed the individual Defendants to "hide Plaintiff in the 'hole,'" prevent him from speaking to anyone, and prevent him from receiving visitors or phone call for seven days. (Id. ¶ 82.) Finally, Plaintiff alleges that the County had a policy or custom that "allowed and authorized John Does 1-5 and Jane Does 1-5 to disregard Plaintiff's life-threatening medical needs for four days, nearly causing his death." (Id. ¶ 83.)

16

However, as Defendants argue, there is no evidence in the record of any policy or custom of Clayton County that caused the alleged constitutional deprivations.  "[I]n order to survive a municipal defendant's motion for summary judgment, the plaintiff must identify and produce direct evidence of (1) the existence of some policy, custom, or practice (2) attributable to the municipality (3) that was the 'moving force' behind (4) a constitutional injury." Matthews v. City of Atlanta, 699 F. Supp. 1552, 1558 (N.D. Ga. 1988). Evidence in the record shows that the Clayton County Sheriff's Office *does* have policies and procedures in place to address the medical needs of inmates, the use of force by staff members, and inmate grievances based on staff members' actions.  (See generally Affidavit of Major Robert Sowell, Dkt. [36-5].)

According to testimony of Major Robert Sowell, Jail Administrator of the Clayton County Sheriff's Office, at all relevant times, the Clayton County Sheriff's Office had in place Standard Operating Procedures regarding the supervision and security of inmates and the provision of medical care to inmates.  (Id.)  Furthermore, Major Sowell states that all correctional officers serving in the jail are trained in those procedures.  (Id. ¶ 3.)  The exhibits attached to Major Sowell's deposition contain the relevant policies that were in

17

place during the events in question.  Those policies include: (1) "only the amount of force reasonably necessary to maintain or regain control shall be used by the staff of the Clayton County Detention Facilities" and "physical punishment of an inmate shall not be permitted under any circumstances;" (2) staff "shall provide the use of medical services to treat any illness, disease, infirmity, or ailment from which an inmate may suffer" and "diligent efforts shall be made to ensure all judicially mandated standards for medical care of inmates are upheld;" (3) "staff shall not deny an inmate necessary care or treatment while in the custody of the Clayton County Detention Facilities;" (4) "each newly admitted inmate shall undergo a preliminary health screening by the Medical Staff;" (5) "inmates shall be provided a Grievance Form upon request" and "no inmate shall be denied a grievance form;" (6) inmate "grievances shall be processed in a timely manner;" (7) "the grievance procedure may be used by any inmate" and "the actions of staff members" and "other matters concerning the conditions of care or supervision" are "grievable."  (Id. Exhibits A, B, & C.)

Plaintiff presents no evidence to show that these policies or any other action taken by the Clayton County Sheriff's Office were the moving force

behind the alleged constitutional violations.[8]  Plaintiff has not shown any degree of culpability on the County's part or any causal link between the County and the alleged deprivations.  Therefore, Plaintiff has failed to raise a triable issue of material fact, and Defendants' motion for summary judgment is **GRANTED** with regard to Plaintiff's 42 U.S.C. § 1983 claim against Clayton County.

>        C.        Defendant Fluellen - 42 U.S.C. § 1983

>                1.        Excessive force

Plaintiff alleges that Defendant Fluellen used excessive force against him in violation of the due process clause of the fourteenth amendment.[9]

---

[8] The Court notes that Plaintiff raises a new argument regarding the County's § 1983 liability in his response to Defendants' motion for summary judgment.  There, he alleges that the County has been "so deliberately indifferent to the needs of inmates, they have been negligent in reviewing their contract with the 3rd party [for the provision of medical care] and making sure that they are adhering to the contract." (Pl.'s Resp. Br., Dkt. [37] at 9.)  Plaintiff alleges that the contractor named on the contract is not the party actually providing medical care to inmates, and that the contract does not allow the contractor to out-source those services to another company.  (Id.)  Finally, Plaintiff alleges that "Clayton County's complete disregard for the contract and the inmates [*sic*] health has placed the inmates at jeopardy and allows for the denial of medical care to run rampant at the Clayton County jail."  (Id. at 9-10.)  Again, however, Plaintiff fails to provide any evidence that this custom or policy (if it can appropriately be characterized as such) is the moving force behind the alleged constitutional violations.

[9] As a pretrial detainee, Plaintiff is protected by the due process clause of the fourteenth amendment.  See Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 n. 4 (11th Cir. 1995).  "The minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons."  Hamm v. Dekalb Cnty., 774 F.2d 1567, 1574 (11th Cir. 1985).

Specifically, Plaintiff alleges that Defendant Fluellen and the other individual Defendants "used and directed excessive force against the Plaintiff when they entered his cell at 5:30 a.m., and grabbed him from out of his bed, while in a dead sleep, and violently assaulted him." (Complaint for Damages, Dkt. [1] ¶ 64.) Defendants argue that Plaintiff has failed to present any evidence that Defendant Fluellen used or directed the use of any force against Plaintiff during the incident in Plaintiff's cell, and therefore, this claim must be dismissed. The Court agrees with Defendants.

A § 1983 claim "requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (quoting Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982)). Here, Plaintiff has failed to demonstrate a causal connection between actions taken by Defendant Fluellen and the alleged deprivation. Plaintiff states in his own deposition that an Officer Smith, not Defendant Fluellen or any of the other named Defendants, used force against him during the incident in question.[10] (Deposition of Andre Thurmon, Dkt. [36-4] at 39:11-40:11.)

---

[10] The Court notes that Plaintiff named an Officer Green on the Complaint Form he completed after the incident as the person who "snatched him out of bed" and twisted his arm. The discrepancy is immaterial, however, because in neither account

Plaintiff does not assert that Defendant Fluellen even came into contact with him during the incident, nor does he offer any evidence that Defendant Fluellen directed or controlled Officer Smith or anyone else who used force against Plaintiff.  See LaMarca, 995 F.2d at 1539 (the personal acts of the defendant and whether the defendant "actually controls, or fails properly to supervise a subordinate" are relevant inquiries in establishing § 1983 causation).  Officer Gomez's account of the incident is consistent with Plaintiff's recollection that Defendant Fluellen did not personally use, or direct anyone else to use, force against Plaintiff.  (See Jail Miscellaneous Incident Report of L.A. Gomez, Dkt. [37-11] at 2.)

Therefore, Plaintiff has not raised a triable issue of material fact regarding excessive use of force by Defendant Fluellen, and Defendants' motion for summary judgment is **GRANTED** as to this claim.[11]

---

does Plaintiff identify Defendant Fluellen or any of the other named Defendants as the person who used force against him.

[11] In his response to Defendants' motion for summary judgment, Plaintiff attempts to raise new arguments regarding his excessive force claim against Defendant Fluellen.  The complaint cites only the events that occurred in Plaintiff's cell as the basis for this claim.  However, Plaintiff's response brief discusses in detail the events surrounding the traffic stop and Plaintiff's arrest in relation to this claim.  (See Compliant for Damages, Dkt. [1] ¶¶ 64-68; Pl.'s Resp. Br., Dkt [37] at 10-15.)  Defendants correctly point out that "Plaintiff cannot change [his] theory of the case (in an effort to avoid summary judgment) *after* Defendant moves for summary judgment."  Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1138 (N.D. Ga. 1997).  Therefore,

2.      Deliberate indifference to serious medical needs

Plaintiff alleges that Defendant Fluellen was deliberately indifferent to Plaintiff's serious medical needs in violation of the Fourteenth Amendment. Plaintiff alleges that he repeatedly told Defendant Fluellen that he was unable to breathe, but his complaints were ignored or brushed off.  (Complaint for Damages, Dkt. [1] ¶¶ 70-1.)  Plaintiff also states that Defendant Fluellen and others knew that Plaintiff's lung was collapsed, but did nothing for several days.  (Id. ¶¶ 72, 76.)  Defendants argue, however, that Defendant Fluellen had no knowledge of Plaintiff's serious medical needs, and even if he did possess such knowledge, he did not act with deliberate indifference.  (Def.s' MSJ Br., Dkt. [36-1] at 22-23.)  Again, the Court agrees with Defendants.

To establish a deliberate indifference claim, Plaintiff must show that Defendant Fluellen consciously disregarded a substantial risk of serious harm to Plaintiff.  Farmer v. Brennan, 511 U.S. 825, 839 (1994).  This standard has an objective and a subjective component.  Plaintiff must show: (1) that Defendant Fluellen had actual knowledge of a substantial risk of serious harm, or that the risk was so obvious that a reasonable prison official would have noticed it; and

_____

the Court limits its consideration of this claim to the events that occurred in Plaintiff's cell after his arrest.

(2) that Defendant Fluellen recklessly disregarded that risk or acted with deliberate indifference.  Id. at 836-42.  The Court finds no evidence in the record that Defendant Fluellen was aware of Plaintiff's serious medical needs, or that Defendant Fluellen or any other prison official acted with deliberate indifference.

First, the evidence does not support a finding that Defendant Fluellen had knowledge of a substantial risk of serious harm to Plaintiff.  Contrary to Plaintiff's assertions in the complaint, it does not appear that Plaintiff ever spoke of serious injuries or medical concerns to Defendant Fluellen, or that Plaintiff displayed any signs of serious medical needs in Defendant Fluellen's presence.  Plaintiff does not recall complaining of pain or trouble breathing at the scene of his arrest, other than when medical personnel were pouring water over his face to try to wash off the OC spray.  (Deposition of Andre Thurmon, Dkt. [36-4] 31:12-32:14.)  The record indicates that Plaintiff was verbally and physically combative toward Defendant Fluellen during transport to the jail and the intake process, apparently not showing signs of serious injury or pain. (Deposition of Deputy Patrick D. Fluellen, Dkt. [36-3] 17:1-21.)  Plaintiff recalls being seen by a nurse when he arrived at the jail, but he does not recall what he said to her.  (Deposition of Andre Thurmon, Dkt. [36-4] 35:1-6.)  He

23

also does not recall requesting medical attention or speaking to anyone at the jail about his medical issues prior to the alleged incident with Defendant Fluellen and the other officers in his cell.  (Id. 37:2-23.)

Notably, Plaintiff did not complain of injuries or pain to Defendant Fluellen during the incident in his cell.  (Deposition of Deputy Patrick D. Fluellen, Dkt. [36-3] 23:10-15.)  In fact, Plaintiff stated in his deposition that after the incident, he waited "until everybody started coming on the shift change" to request medical treatment.  (Deposition of Andre Thurmon, Dkt. [36-4] 41:6-13.)  From Plaintiff's own testimony it appears that his first complaints of shortness of breath and concerns about a broken rib occurred when he visited the infirmary and was seen by jail medical personnel.[12]  (Id. 48:1-22) There is no evidence to indicate that Defendant Fluellen saw Plaintiff

---

[12] The only hint in the record that Plaintiff told Defendant Fluellen and the other officers in his cell of trouble breathing or pain is in a report filed by Plaintiff almost a year after the incident.  He states, "I told them I couldn't breathe; they said it takes a couple of days to get the pepper spray out of your body."  He says he also showed the officers some of his wounds from the arrest (from the taser, handcuffs and blows he received) and they laughed at him.  (Complaint Form by Andre Thurmon, Dkt. [36-5] at 49.)  However, this perfunctory assertion, which is inconsistent with other statements given by Plaintiff and the officers involved in the incident, is insufficient to show that Defendant Fluellen had knowledge of a substantial risk of serious harm or that Defendant Fluellen acted with deliberate indifference to Plaintiff's medical needs.

after his visit to the infirmary, or that Defendant Fluellen was involved with any

of Plaintiff's diagnoses or medical treatment.

Even if Plaintiff could demonstrate that Defendant Fluellen was aware of

his serious medical needs, he cannot show that Defendant Fluellen or any other

jail personnel were deliberately indifferent to his needs.  At the scene of his

arrest, Plaintiff was examined by Clayton County Fire and Rescue personnel

and treated for his wounds and exposure to OC spray. (Deposition of Deputy

Patrick D. Fluellen, Dkt. [36-3] 16:3-10; see also Clayton County Sheriff's

Office Incident Report by Defendant Fluellen, Dkt. [36-3] at 56.)  Plaintiff

admits that he was examined "two to three minutes" after the arrest incident by

medical personnel and was not diagnosed with any serious injuries.

(Deposition of Andre Thurmon, Dkt. [36-4] 27:11-28:11) Consistent with

Sheriff Office policy, when Plaintiff arrived at the jail, he was evaluated by a

nurse who also noted no serious injuries.

Later at the jail, after Plaintiff spoke with Officer Munson and Officer

Moss about the alleged incident with Defendant Fluellen in his cell, Defendant

Smith responded to Plaintiff's complaints and "immediately got [Plaintiff] an

internal affair statement form" to "tell the story" and "tell them about what

happened."  (Id. 41:14-42:18.)  That same day, Plaintiff was taken to the

infirmary for x-rays and he was examined by a nurse and a doctor.  (Id. 42:21-43:24.)  The x-rays were examined promptly by another doctor.  Plaintiff states that after returning to his cell from the infirmary, "all I remember is them rushing to my cell to get me out the cell and take me to Southern Regional [Hospital]."  (Id. 45:11-24.)  According to Plaintiff, the officers rushed to his cell after his cell mate paged them over the intercom and reported that Plaintiff was experiencing shortness of breath.  (Id. 46:2-4.)  Plaintiff was then transported to the hospital for treatment of his collapsed lung.

By Plaintiff's own account, rather than acting with deliberate indifference, jail officials were responsive to his serious medical needs, and Plaintiff received the treatment he needed.  Plaintiff has failed to raise a triable issue of material fact as to this count.  Therefore, Defendants' motion for summary judgment is **GRANTED** with regard to this claim against Defendant Fluellen.

D.      Defendant Fluellen - Assault and Battery

Plaintiff claims that "[b]y grabbing [him] and then violently slamming his body into the wall, then throwing him down on his bed, [the individual Defendants] placed [him] in reasonable fear and apprehension of imminent harmful or offensive contact."  (Complaint for Damages, Dkt. [1] ¶ 86.)

Defendants argue that Plaintiff has presented no evidence to support this claim against Defendant Fluellen.  (Def.s' MSJ Br., Dkt. [36-1] at 23.)  The Court agrees with Defendants.

Assault is "an intentional attempt by a person, by force or violence, to do an injury to the person of another, or . . . any attempt to commit a battery, or any threatening gesture, showing in itself or by words accompanying it, an immediate intention coupled with a present ability to commit a battery."  6 Am. Jur. 2d <u>Assault and Battery</u> § 1 (2012).  Battery is "the willful and harmful or offensive touching of another person, which results from an act intended to cause that contact."  <u>Id.</u> § 2.  As discussed above, Plaintiff does not allege that Defendant Fluellen touched him during the incident in his cell.  Therefore, Plaintiff's claim against Defendant Fluellen must be limited to assault.

According to Plaintiff, during the alleged incident in his cell, Defendant Fluellen asked him to sign the notice regarding his license suspension. (Deposition of Andre Thurmon, Dkt. [36-4] 39:4-10.)  Plaintiff does not allege that Defendant Fluellen played any other role in the incident.  On the Complaint Form he filled out after the incident, Plaintiff said: "I was asleep.  Officer Green snached [*sic*] me out of my bed. . . . I tried to explain that I was hurt from the previous insident [*sic*] with Officer Fluellen.  Officer Green twisted my hurt left

27

arm and put it behind my back and told me not to move.  Then Officer Fluellen

pulled out a paper and wanted me to sign it.  I was in fear of my safety."

(Complaint Form by Andre Thurmon, Dkt. [36-4] at 69.)  Despite Plaintiff's

assertion that he was in fear for his safety, the record shows no attempt by

Defendant Fluellen to injure Plaintiff or commit a battery, and no evidence of

threatening gestures or words from Defendant Fluellen.

On another form filled out by Plaintiff regarding the incident, he stated:

"Officer Smith grabbed me and push [*sic*] me from wall to wall, then through

[*sic*] me down on the bed, then he shook me and told me to sit up up [*sic*].

Officer Fluellen tried to make me sign a piece of paper stating D.U.I.  Officer

D. Davis stood and blocked the door with another officer."  (Statement Form by

Andre Thurmon, Dkt. [36-4] at 72.)  But after Plaintiff refused to sign the paper,

he says, Defendant Fluellen "walked away from [him] and said I'll see you in

court."  (Id.)  Officer Gomez's recollection of the incident is consistent with

Plaintiff's account.  According to Officer Gomez, Defendant Fluellen asked

Plaintiff twice to sign the paper regarding his license, and when Plaintiff

refused, the officers walked out.  (Jail Miscellaneous Incident Report by L.A.

Gomez, Dkt. [36-5] at 38-39.)

None of the accounts of the incident in Plaintiff's cell, including Plaintiff's own accounts, show that Defendant Fluellen attempted or intended to batter Plaintiff, or that he made any threatening gestures toward Plaintiff at all. Plaintiff himself says that Defendant Fluellen simply walked away after Plaintiff refused to sign the paper.  Therefore, Plaintiff has failed to raise a triable issue of material fact regarding the assault and battery claim against Defendant Fluellen and Defendants' motion for summary judgment as to this count is **GRANTED**.

### Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment is **GRANTED**.  The Clerk shall close the case.

**SO ORDERED**, this  18th  day of December, 2012.


**RICHARD W. STORY**
United States District Judge

29